IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG,<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>        Plaintiff<br><br>vs.<br><br>MATTRESS FIRM, INC<br>10201 S MAIN ST<br>HOUSTON, TX 77025<br><br>        Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Andrew Perrong (Plaintiff) brings this action under the TCPA alleging that MATTRESS FIRM, INC (Mattress Firm) commissioned a series of automated illegal robocalls to telephone numbers for which the charged party is called, like Mr. Perrong's number, which is prohibited by the TCPA.

3. The Plaintiff never provided his prior express written consent to receive the calls.

## Parties

4. Plaintiff Andrew Perrong is a Pennsylvania resident.

5. Defendant MATTRESS FIRM, INC is a Delaware corporation which is headquartered and has its principal place of business at 10201 S MAIN ST HOUSTON, TX 77025. It does business in this District through a number of retail stores in this District.

## Jurisdiction & Venue

6. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's TCPA claims arise under federal law.

7. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 as these claims are related and form part of the "same case or controversy," as they are related to a consumer transaction between Plaintiff and Defendant.

8. This Court has personal jurisdiction over the Defendant. Mattress Firm regularly engages in business in this District, including by having retail stores in this District and selling goods to residents of this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the illegal calls to the Plaintiff occurred in this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Calls

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls (robocalls) to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Calls

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls?*

*Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

20. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

21. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

**Factual Allegations**

22. Defendant Mattress Firm is in the business of selling mattresses via retail stores in a number of states, including Pennsylvania. Defendant is engaged in "trade or commerce."

23. Mattress Firm uses robocalls to call its customers. Such robocalls are placed without its customers' prior express written consent.

24. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

25. Plaintiff has a private telephone number of (215) 947-XXXX.

26. The Plaintiff is charged for each call placed to that number.

27. Plaintiff receives a ring charge for each call placed to him on that line, regardless of whether or not he answers the call.

28. Plaintiff is also charged per minute for each call placed to him on that line.

29. On October 28, 2020, Plaintiff purchased a mattress and a base from Defendant for personal, family, and/or household use, and had scheduled delivery for October 31, 2020, which he subsequently rescheduled to November 14, 2020.

30. When Plaintiff purchased the mattress, the Mattress Firm salesman, who was acting as Defendant's agent, informed him that he could return the mattress within 120 days after delivery for a refund.

31. In fact, the salesman explained that this was a better policy than a competitor store Plaintiff had been considering, since they only offered a 90-day return policy.

32. Relying on these representations, Plaintiff decided to go ahead with the purchase. Because the Plaintiff had received a discount on the base, the salesman informed him that the base was not returnable, but that the mattress was returnable. To that end, the invoice and sales receipt the Plaintiff received indicated that there were "no returns" on the base. In the comments box, the salesman handwrote, "no returns on adj. Bases."

33. As part of the purchase, the salesman also asked the Plaintiff for his telephone number so that the delivery men could call the Plaintiff to inform him at what time on the delivery day they would deliver the mattress.

34. At no time prior to completing the purchase was the Plaintiff informed that providing his telephone number would subject him to unsolicited "robocalls" from the Defendant.

35. In addition, at no time prior to completing the purchase was the Plaintiff informed that there was a restocking fee for the mattress. In fact, the additional literature provided to him at the time of purchase also makes no mention of this purported restocking fee.:

> **"120 NIGHT SLEEP TRIAL**
> You should sleep on it for a minimum of 30 nights to allow for ideal adjustment. If you're not comfy within 120 nights of the original mattress delivery date, we will do our best to match you to the right mattress."

36. Plaintiff did not consent, either expressly or impliedly, to receive "robocalls" from the Defendant.

37. Despite never having received Plaintiff's prior express written consent, Mattress Firm placed at least two automated "robocalls" to Plaintiff, one on November 13, 2020, and one on November 14, 2020.

38. When Plaintiff answered both calls, each call began by playing a prerecorded message from a robotic-sounding voice which stated, "this is an automated call from Mattress Firm. . ."

39. In fact, the entirety of both calls was conducted using an "artificial or prerecorded voice."

40. The calls were not made for emergency purposes.

41. These calls came from the caller ID 855-872-2243.

42. Other individuals have complained of receiving the same spam calls. Rob W., *Mattress Firm Delivery Confirmation (Robocall)*, SHOULD I ANSWER? (May 2020), https://www.shouldianswer.com/phone-number/8558722243/2 ("Was expecting to speak to a

real person on delivery info. Would not of answered but just confirmed with salesman from store on time of deliver & info matched up.").

43. In addition, the calls were conducted using an Automatic Telephone Dialing System (ATDS) because it would be incongruous for a human to have dialed the calls, only to play the called party pre-recorded automated messages.

44. Additionally, the calls were conducted using an ATDS because the equipment obviously has the capacity to store telephone numbers to be called and dial those numbers.

45. Plaintiff subsequently attempted to return the mattress he purchased. Plaintiff called the store from which he had purchased the mattress and was informed that Defendant would accept return of the mattress but would deduct a $600.00 "restocking fee."

46. Prior to filing this complaint, Plaintiff corresponded with general counsel for Defendant in an attempt to ascertain whether or not Defendant claimed that they possessed prior express written consent to contact the Plaintiff using an ATDS or artificial or prerecorded voice. Defendant did not contend that they possessed prior express written consent to do so.

47. In addition, Plaintiff attempted to bring up the issue regarding return of the mattress he purchased with general counsel but was ignored.

48. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because the phone line was tied up during the robocalls and his privacy was improperly invaded. He was charged for the calls. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## **Legal Claims**

### Count One:
### Violation of the TCPA's Prohibition Against Automated Calling
### Via Pre-Recorded Message

49. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

50. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making calls, except for emergency purposes, to the telephone number of Plaintiff using an artificial or prerecorded voice.

51. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

52. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any numbers of Plaintiff for which he is charged for the call using an artificial or prerecorded voice in the future.

53. The Defendant's violations were wilful and/or knowing.

### Count Two:
### Violation of the TCPA's Prohibition Against Automated Calling
### With an Automatic Telephone Dialing System (ATDS)

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making calls, except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

56. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any numbers of Plaintiff for which he is charged for the call using an artificial or prerecorded voice in the future.

58. The Defendant's violations were wilful and/or knowing.

### Count Three:
### Violation of the Pennsylvania
### Unfair Trade Practices and Consumer Protection Law (UTPCPL)
### 73 Pa. Cons. Stat. § 201

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The conduct of Defendant's agent in asserting that the Plaintiff could return the mattress within 120 days, without mentioning a restocking fee, constituted deceptive conduct

because it had the likelihood, and in fact did, cause Plaintiff to be confused and misunderstand the purported terms of the sale. 73 Pa. Cons. Stat. § 201-2(4)(xxi).

61. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on its behalf constitute violations of the UTPCPL.

62. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on its behalf's violations of the UTPCPL, Plaintiff is entitled to an award of up to treble his actual damages, in addition to costs in bringing this action, 73 Pa. Cons. Stat. § 201-9.2(a).

## Count Four:
## Breach of Warranty
### (Pled in the alternative to Count Three)

63. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The conduct of Defendant's agent in asserting that the Plaintiff could return the mattress within 120 days, without mentioning a restocking fee, constituted an express warranty.

65. Plaintiff reasonably relied on this warranty in purchasing the mattress.

66. Defendant's subsequent refusal to permit the Plaintiff to return the mattress without incurring a restocking fee rendered this warranty false. Defendant therefore breached its express warranty.

67. The Plaintiff has suffered damages as a direct and proximate result of such breach and is therefore entitled to return the mattress he purchased for a refund without incurring a restocking fee.

## Count Five:
## Breach of Contract
### (Pled in the alternative to Count Three)

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. Plaintiff and Defendant agreed to contract for the purchase and sale of a mattress and base for their mutual benefit. This meeting of the minds was evidenced by a written and signed invoice and receipt, as well as a pamphlet. In addition, consideration was exchanged, and the parties have partially performed their obligations thereunder.

70. The only material terms surrounding this contract with regard to the return of goods sold therein was that the base was not returnable, but that the mattress was returnable for a period of 120 days. None of the contractual documents reference a restocking fee.

71. Defendants breached this contract by adding additional terms, in the form of a restocking fee, which were not part of the original agreement.

72. The Plaintiff has suffered damages as a direct and proximate result of such breach and is therefore entitled to return the mattress he purchased for a refund without incurring a restocking fee, as expressly acknowledged by the terms of their agreement.

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

a. Injunctive relief prohibiting Defendant from calling telephone numbers using an artificial or prerecorded voice, in violation of the TCPA.

b. Injunctive relief prohibiting Defendant from calling telephone numbers using an ATDS in violation of the TCPA.

   c. Because of Defendant's violations of the TCPA's restrictions in 47 U.S.C. § 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

   d. Because of Defendant's violations of the UTPCPL, Plaintiff Perrong seeks for himself up to treble his actual damages incurred in his inability to return the mattress he purchased for a refund, plus costs incurred in bringing this action.

   e. Because of Defendant's breach of warranty, Plaintiff Perrong seeks for himself a return the mattress he purchased for a refund without incurring a restocking fee.

   f. Because of Defendant's breach of contract, Plaintiff Perrong seeks for himself a return the mattress he purchased for a refund without incurring a restocking fee.

   g. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **January 4, 2020**

                 _____/s/_____
                               Andrew Perrong
                               *Plaintiff Pro-Se*
                          1657 The Fairway #131
                           Jenkintown, PA 19046
                            Phone: 215-791-6957
                          Facsimile: 888-329-0305
                          andyperrong@gmail.com